**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

GARNIK SARGSYAN,

           Petitioner,

    v.

PAMELA BONDI, et. al.,

           Respondents.

No.  1:26-CV-00259-WBS-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding with retained counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. See ECF No. 1.  Respondents filed a response. See ECF No. 9. Petitioner filed a traverse. See ECF No. 10.

## I. BACKGROUND

### A.   Procedural History

On January 13, 2026, Petitioner filed the instant petition for writ of habeas corpus, ECF No. 1, together with a motion for temporary restraining order, ECF No. 2. The District Judge denied the motion for temporary restraining order, finding Petitioner failed to show a likelihood of success on the merits of Petitioner's substantive and due process claims. See ECF No. 4, pg. 7. The District Judge found that Petitioner did not "distinguish his case from the nearly identical cases in which this court specifically held that noncitizens who have entered unlawfully, even if

1

they were encountered, taken into custody, and released on parole, were nevertheless "applicants for admission" subject to § 1225." Id. at 3-4 (citing Oliveria v. Albarran, No. 1:25-CV-01760 WBS AC, 2025 WL 3525923 (E.D. Cal. Dec. 9, 2025) and Liang v. Almodovar, et al., No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025). Accordingly, the District Judge concluded that Petitioner is "deemed to be an 'applicant for admission' and thus subject to Section 1225, his detention comports with the requirement of mandatory detention set forth in [Department of Homeland Security's (DHS)] policy memorandum." Id. at 6 (citing Alonzo v. Noem, No. 1:25-CV-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025) and Choudhary v. Albarran, et al., No. 1:26-cv-0119 WBS CKD, 2026 WL 102708, at *3 (E.D. Cal. Jan. 14, 2026)).

###    B.    Petition for Writ of Habeas Corpus

Petitioner asserts that on December 3, 2023, he was released from Customs and Border Patrol (CPB) custody, "paroled into the United States . . . [and] placed in removal proceedings with a Notice to Appear (NTA) issued the same day he was paroled." ECF No. 1, pg. 2. According to Petitioner, such parole was granted because "CBP determined that Petitioner was not a flight risk or danger to the community . . . [and] for the purpose of applying for asylum in the United States." Id. Petitioner asserts that his parole was granted to him pursuant to 8 U.S.C. § 1182(d)(5), which provides parole on "'a case-by-case basis for urgent humanitarian reasons or significant public benefit.'" Id. (quoting 8 U.S.C. § 1182(d)(5)). Petitioner contends he applied for asylum September 2024, and was scheduled for "a non-detained merits hearing for March 23, 2027." Id. at 2-3.  Petitioner alleges that prior to his detention on December 30, 2025, Petitioner was not given notice of Immigrations and Customs Enforcement's (ICE) intent to re-detain him, ICE lacked "particularized evidence that Petitioner is a danger to the community or a flight risk," and Petitioner was not provided "an individualized hearing before a neutral decisionmaker to assess whether his recent re-detention is warranted due to danger or flight risk." Id. at 3.

Petitioner asserts three claims for relief, alleging a violation of Petitioner's (1) substantive due process rights pursuant to the Fifth Amendment; (2) procedural due process rights pursuant to the Fifth Amendment; and (3) Forth Amendment right to be free from unreasonable

search and seizure. See id. at 9-16. As to relief, Petitioner requests that this Court:

>  1. Assume jurisdiction over this matter;
>  2. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody on the same terms of supervision as he was on own prior to his arrest in December 2025, without imposing any additional restrictions on him, such as electronic monitoring;
>  3. Declare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment and the Fourth Amendment;
>  4. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community;
>  5. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any further basis justified under law;
>  6. Grant such further relief as the Court deems just and proper.

Id. at 16-17.

Attached to the petition, Petitioner provides a letter titled "Notice of Internet-Based Hearing," ECF No. 1-2, and a declaration from Petitioner's attorney, ECF No. 1-3, which includes an email record of Petitioner's attorney requesting a call with Petitioner while Petitioner was detained.

### C. **Response to Petition**

Respondents filed a response to the petition, asserting that on October 27, 2025, Petitioner was arrested for domestic battery, and though "[a]n immigration detainer was lodged, [] Glendale Police Department declined to honor it and released Petitioner." ECF No. 9, pg. 2. Respondents therefore contend that Petitioner's detention was proper "due to his immigration status and arrest for domestic battery." Id. According to Respondents, "Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." Id. at 2. Respondents argue that Petitioner remains an applicant for admission despite his prior release because such release did not constitute an admission. See id. Respondents contend that Petitioner's charge for domestic battery was a change in circumstances.[1] See id. Respondents

---

[1] Respondents characterize domestic battery as "a crime of violence." ECF No. 9, pg. 2. Petitioner argues that such characterization "has been rejected by the Board of Immigration Appeals, given that domestic battery criminalizes 'offensive touching.'" ECF No. 10, pg. 4 (citing Matter of Sanudo, 23 I&N Dec. 968 (BIA 2006). The Court does not find that resolving this dispute is necessary to address the merits of the petition and therefore expresses no opinion on it.

3

assert that "[a]s an applicant for admission, Petitioner is subject to mandatory detention and thus ineligible for a bond hearing." Id. According to Respondents, the petition should be denied because "Petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." Id. (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)).

Attached to the response is Petitioner's Notice to appear dated September 6, 2024, ECF No. 9, pgs. 4-7, Petitioner's "Record of Deportable/Inadmissible Alien" dated December 30, 2025, id. at 9-12, Petitioner's "Warrant for Arrest of Alien" dated December 30, 2025, id. at 14-15, and Petitioner's "Notice of Custody Determination," dated December 30, 2025, id. at 17.

**D.      Petitioner's Traverse**

In his traverse, Petitioner argues that due process rights extend to all individuals within the United States, regardless of their status as admitted or an applicant for admission, because "[t]he Constitution establishes due process rights for 'all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.'" ECF No. 10, pg. 3 (quoting Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) (internal citations omitted). Thus, Petitioner asserts that due process

> 'requires some kind of a hearing before the State deprives a person of liberty or property.' Zinermon v. Burch, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. See Hurd v. D.C., Gov't, 864 F.3d at 683 (citing Young v. Harper, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471 (1972) (same, in parole context).

> Id. at 2-3.

Petitioner argues that because immigration detention is a civil matter, Petitioner's liberty interest in freedom from confinement is "equal if not greater" than in the cited cases, where the courts addressed freedom from confinement in the criminal context. Id. at 3. Petitioner contends that "numerous District Court decisions have ordered release in similar circumstances, both in this District and in others," and cites fourteen cases in support, some unpublished, twelve of which are from the Eastern District. Id. at 3-4. Next, Petitioner rejects Respondents' argument that there constituted a change in circumstance which justified Petitioner's re-detention because

4

"Petitioner was never charged with any crime," and even if it could be considered a change in circumstances, due process requires that Petitioner be "provided with the opportunity to have a neutral arbiter decide if the arrest alone could meet the government's burden of proving that he is a danger to the community by clear and convincing evidence." Id. at 4-5. Attached to the traverse is a document titled "Los Angeles County District Attorney Charge Evaluation Worksheet," showing an arrest of Petitioner on October 27, 2025, with a large stamp across the page which states: "DA REJECT." ECF No. 10-1.

## II. DISCUSSION

The undersigned finds that Respondents failed to provide Petitioner with procedural due process because Respondents did not provide Petitioner with the process prescribed by statute for revocation of Petitioner's 8 U.S.C. §1182(d)(5) parole prior to his arrest and detention on December 30, 2025. Thus, the undersigned will recommend granting the petition and ordering Respondents release Petitioner, upon the same terms as his prior release, and that Respondents be enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with 8 CFR 212.5 (e).

### A.    **Due Process**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989);

Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1.    Liberty Interest

As for the first step, the undersigned finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Respondents argue that "the petition should be denied because 'Petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.'" ECF No. 9, pg. 2 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)). However, Petitioner contends, and Respondents do not challenge, that Petitioner was paroled pursuant to 8 U.S.C. §1182(d)(5). This is supported by Petitioner's "Notice to Appear," issued by DHS, which explicitly states: "On December 3, 2023, you were paroled into the United States of America pursuant to Section 212 (d)(5) of the Immigration and

6

Nationality Act." ECF No. 1-1.  8 U.S.C. §1182(d)(5) codifies Section 212 (d)(5) of the Immigration and Nationality Act and provides that:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, **in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit** any alien applying for admission to the United States, but **such parole of such alien shall not be regarded as an admission of the alien** and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. §1182(d)(5) (emphasis added).

The undersigned agrees with Respondents that Petitioner's parole does not constitute an admission, as such a finding is in accordance with the statute. However, the undersigned finds Petitioner's claim that he was denied due process does not turn on whether Petitioner has been admitted or is an applicant for admission. Indeed, §1182(d)(5) explicitly states that parole does not constitute admission and provides the Secretary of Homeland Security with the discretion to grant parole to noncitizens who have not been admitted. Thus, even if Respondents are correct that Petitioner's only "right to freedom from immigration detention," is limited to "the form provided by Congress," through the enactment of §1182(d)(5), Congress has provided a right to freedom from immigration detention, which can be granted at the discretion of the Secretary of Homeland Security. Here, Petitioner was granted discretionary parole pursuant to §1182(d)(5).

The undersigned finds that Petitioner's December 30, 2025, detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Accordingly, the undersigned finds that the grant of discretionary parole provided Petitioner with a protectable liberty interest in his continued release.

    2.    <u>Necessary Procedure</u>

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the

Constitution. The undersigned finds that Petitioner was denied procedural due process because Respondents failed to provide Petitioner the process prescribed in 8 CFR 212.5 (e) when revoking Petitioner's parole.[2] Therefore, the undersigned will recommend the petition be granted as to Petitioner's claim that his December 30, 2025, detention violated his procedural due process rights.

As previously discussed, Petitioner was paroled pursuant to 8 U.S.C. §1182(d)(5). In accordance with this statute, terminating parole granted pursuant to §1182(d)(5) required a determination that parole is accomplished or no longer warranted. Given that purpose of parole itself is determined on a "case-by-case basis," the undersigned finds that revocation required an individualized determination that Petitioner is no longer suitable for parole. 8 U.S.C. §1182(d)(5). The undersigned finds that a determination that the purpose of parole was accomplished or no longer warranted cannot be based on DHS' new interpretation of the statute because such a change does not address the case-specific reasons Petitioner was granted parole.

Moreover, 8 CFR 212.5 (e) prescribes a specific process for revocation of §1182(d)(5) parole:

> Termination of parole —
> (1) Automatic. Parole shall be automatically terminated without written notice
> > (i) upon the departure from the United States of the alien, or,
> > (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
> (2) (i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240

___

[2]   Though many Courts, including those within the Eastern District, consider the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976) to determine what process an immigration detainee with a protectable liberty interest is owed, the undersigned finds that such a balancing test is not necessary here given the statute under which Petitioner was granted discretionary parole explicitly prescribes a process for revoking such discretionary parole.

of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 CFR 212.5 (e).

The statute includes explicit consideration of "automatic" revocation of parole, which does not provide for automatic revocation of parole upon DHS implementing a new statutory interpretation. See 8 CFR 212.5 (e). Petitioner did not leave the United States and, given his immigration court hearing was set for March 23, 2027, ECF No. 1-2, pg. 1, it does not appear that the time for Petitioner's parole had expired. In accordance with 8 CFR 212.5 (e), the undersigned finds that even if Petitioner is only entitled to the process prescribed by the statute, here, Petitioner was not subject to automatic revocation of parole.

The statute provides that, absent automatic revocation, parole can only be terminated with notice that "in the opinion of one of the officials listed in paragraph (a) of this neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 CFR 212.5 (e). Respondents assert there was a "change in circumstances," here because Petitioner "was charged with domestic battery." ECF No. 9, pg. 2. However, Respondents do not assert that such change in circumstance resulted in the determination by an official listed in 8 CFR 212.5 (a) that "neither humanitarian reasons nor public benefit warrants" Petitioner's continued parole. 8 CFR 212.5 (e). The Court recognizes that Petitioner's charge may give rise to such a determination but, Respondents make no claim that such a determination was ever made. Nor do Respondents allege that Petitioner was provided notice of such a determination, as required by the statute. Absent a determination, or notice of such determination, Respondents failed to provide Petitioner with the process afforded by 8 CFR 212.5 (e). Accordingly, the undersigned finds that Respondents denied Petitioner the process due, as prescribed in 8 CFR 212.5 (e), and will therefore recommend the petition be granted.

/ / /

/ / /

9

///

### B.    Scope of Habeas Relief

The undersigned must next determine the appropriate scope of habeas relief. Given the undersigned finds that Petitioner was granted discretionary parole and Respondents violated Petitioner's due process rights when re-detaining Petitioner, the undersigned will recommend Petitioner be returned to the position he was prior to the violation of his due process rights. Specifically, the undersigned will recommend that Respondents be ordered to immediately release Petitioner under the same conditions he was released previously and that Respondents be enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with 8 CFR 212.5 (e):

> upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 CFR 212.5 (e)

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.    It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as to Petitioner's procedural due process claim.

2.    It is RECOMMENED that Petitioner be RELEASED IMMEDIATELY from Respondents' custody under the same conditions he was released previously.

3.    It is RECOMMENDED that Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with 8 CFR 212.5 (e).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam)

10

(stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 20, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE