**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| GARNIK SARGSYAN,<br><br>                    Petitioner,<br><br>          v.<br><br>PAMELA BONDI, et. al.,<br><br>                    Respondents. | No.  1:26-CV-00259-WBS-DMC-HC<br><br>AMENDED FINDINGS AND RECOMMENDATIONS<br><br>And<br><br>ORDER |

Petitioner, an immigration detainee proceeding with retained counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. See ECF No. 1.  Respondents filed a response. See ECF No. 9. Petitioner filed a traverse. See ECF No. 10.

The undersigned issued amended findings and recommendations, ECF No. 14, Respondents filed objections, ECF No. 15, and Petitioner responded to those objections, ECF No. 16. Petitioner additionally filed a notice informing the Court that he appealed his order of removal. See ECF No. 17.  In light of the information provided, the undersigned will vacate the prior findings and recommendations and issue these amended findings and recommendations.

/ / /

/ / /

/ / /

/ / /

1

## I. BACKGROUND

**A.** **Procedural History**

On January 13, 2026, Petitioner filed the instant petition for writ of habeas corpus, ECF No. 1, together with a motion for temporary restraining order, ECF No. 2. The District Judge denied the motion for temporary restraining order, finding Petitioner failed to show a likelihood of success on the merits of Petitioner's substantive and due process claims. See ECF No. 4, pg. 7. The District Judge found that Petitioner did not "distinguish his case from the nearly identical cases in which this court specifically held that noncitizens who have entered unlawfully, even if they were encountered, taken into custody, and released on parole, were nevertheless "applicants for admission" subject to § 1225." Id. at 3-4 (citing Oliveria v. Albarran, No. 1:25-CV-01760 WBS AC, 2025 WL 3525923 (E.D. Cal. Dec. 9, 2025) and Liang v. Almodovar, et al., No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025). Accordingly, the District Judge concluded that Petitioner is "deemed to be an 'applicant for admission' and thus subject to Section 1225, his detention comports with the requirement of mandatory detention set forth in [Department of Homeland Security's (DHS)] policy memorandum." Id. at 6 (citing Alonzo v. Noem, No. 1:25-CV-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025) and Choudhary v. Albarran, et al., No. 1:26-cv-0119 WBS CKD, 2026 WL 102708, at *3 (E.D. Cal. Jan. 14, 2026)).

**B.** **Petition for Writ of Habeas Corpus**

Petitioner asserts that on December 3, 2023, he was released from Customs and Border Patrol (CPB) custody, "paroled into the United States . . . [and] placed in removal proceedings with a Notice to Appear (NTA) issued the same day he was paroled." ECF No. 1, pg. 2. According to Petitioner, such parole was granted because "CBP determined that Petitioner was not a flight risk or danger to the community . . . [and] for the purpose of applying for asylum in the United States." Id. Petitioner asserts that his parole was granted to him pursuant to 8 U.S.C. § 1182(d)(5), which provides parole on "'a case-by-case basis for urgent humanitarian reasons or significant public benefit.'" Id. (quoting 8 U.S.C. § 1182(d)(5)). Petitioner contends he applied for asylum September 2024, and was scheduled for "a non-detained merits hearing for March 23,

2

2027." Id. at 2-3. Petitioner alleges that prior to his detention on December 30, 2025, Petitioner was not given notice of Immigrations and Customs Enforcement's (ICE) intent to re-detain him, ICE lacked "particularized evidence that Petitioner is a danger to the community or a flight risk," and Petitioner was not provided "an individualized hearing before a neutral decisionmaker to assess whether his recent re-detention is warranted due to danger or flight risk." Id. at 3.

Petitioner asserts three claims for relief, alleging a violation of Petitioner's (1) substantive due process rights pursuant to the Fifth Amendment; (2) procedural due process rights pursuant to the Fifth Amendment; and (3) Forth Amendment right to be free from unreasonable search and seizure. See id. at 9-16. As to relief, Petitioner requests that this Court:

1. Assume jurisdiction over this matter;
2. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody on the same terms of supervision as he was on own prior to his arrest in December 2025, without imposing any additional restrictions on him, such as electronic monitoring;
3. Declare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment and the Fourth Amendment;
4. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community;
5. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any further basis justified under law;
6. Grant such further relief as the Court deems just and proper.

Id. at 16-17.

Attached to the petition, Petitioner provides a letter titled "Notice of Internet-Based Hearing," ECF No. 1-2, and a declaration from Petitioner's attorney, ECF No. 1-3, which includes an email record of Petitioner's attorney requesting a call with Petitioner while Petitioner was detained.

**C.    Response to Petition**

Respondents filed a response to the petition, asserting that on October 27, 2025, Petitioner was arrested for domestic battery, and though "[a]n immigration detainer was lodged, [] Glendale Police Department declined to honor it and released Petitioner." ECF No. 9, pg. 2. Respondents therefore contend that Petitioner's detention was proper "due to his immigration status and arrest for domestic battery." Id. According to Respondents, "Petitioner is an "applicant

3

for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." Id. at 2. Respondents argue that Petitioner remains an applicant for admission despite his prior release because such release did not constitute an admission. See id. Respondents contend that Petitioner's charge for domestic battery was a change in circumstances.[1] See id. Respondents assert that "[a]s an applicant for admission, Petitioner is subject to mandatory detention and thus ineligible for a bond hearing." Id. According to Respondents, the petition should be denied because "Petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." Id. (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)).

Attached to the response is Petitioner's Notice to appear dated September 6, 2024, ECF No. 9, pgs. 4-7, Petitioner's "Record of Deportable/Inadmissible Alien" dated December 30, 2025, id. at 9-12, Petitioner's "Warrant for Arrest of Alien" dated December 30, 2025, id. at 14-15, and Petitioner's "Notice of Custody Determination," dated December 30, 2025, id. at 17.

**D.     Petitioner's Traverse**

In his traverse, Petitioner argues that due process rights extend to all individuals within the United States, regardless of their status as admitted or an applicant for admission, because "[t]he Constitution establishes due process rights for 'all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.'" ECF No. 10, pg. 3 (quoting Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017) (internal citations omitted). Thus, Petitioner asserts that due process

> 'requires some kind of a hearing before the State deprives a person of liberty or property.' Zinermon v. Burch, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. See Hurd v. D.C., Gov't, 864 F.3d at 683 (citing Young v. Harper, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471 (1972) (same, in parole context).

---

[1] Respondents characterize domestic battery as "a crime of violence." ECF No. 9, pg. 2. Petitioner argues that such characterization "has been rejected by the Board of Immigration Appeals, given that domestic battery criminalizes 'offensive touching.'" ECF No. 10, pg. 4 (citing Matter of Sanudo, 23 I&N Dec. 968 (BIA 2006). The Court does not find that resolving this dispute is necessary to address the merits of the petition and therefore expresses no opinion on it.

Id. at 2-3.

Petitioner argues that because immigration detention is a civil matter, Petitioner's liberty interest in freedom from confinement is "equal if not greater" than in the cited cases, where the courts addressed freedom from confinement in the criminal context. Id. at 3. Petitioner contends that "numerous District Court decisions have ordered release in similar circumstances, both in this District and in others," and cites fourteen cases in support, some unpublished, twelve of which are from the Eastern District. Id. at 3-4. Next, Petitioner rejects Respondents' argument that there constituted a change in circumstance which justified Petitioner's re-detention because "Petitioner was never charged with any crime," and even if it could be considered a change in circumstances, due process requires that Petitioner be "provided with the opportunity to have a neutral arbiter decide if the arrest alone could meet the government's burden of proving that he is a danger to the community by clear and convincing evidence." Id. at 4-5. Attached to the traverse is a document titled "Los Angeles County District Attorney Charge Evaluation Worksheet," showing an arrest of Petitioner on October 27, 2025, with a large stamp across the page which states: "DA REJECT." ECF No. 10-1.

## II. DISCUSSION

The undersigned finds that Respondents provided Petitioner with the procedural requirements pursuant to 8 U.S.C. §1182(d)(5) when detaining Petitioner and will therefore recommend the petition for writ of habeas corpus be denied.

As a preliminary matter, Petitioner raises a claim pursuant to the Fourth Amendment, arguing his arrest was unlawful. See ECF No. 1, pg. 14-16. Petitioner argues that a noncitizen previously released from detention "cannot be rearrested 'solely on the ground that he is subject to removal proceedings' and without some new, intervening cause." Id. at 15 (quoting Saravia v. Sessions, 280 F. Supp. 3d 1168, 1196 (N.D. Cal. 2017). Even if this standard applies, which the undersigned declines to address, Petitioner was re-detained due to the expiration of the term of his parole, as explained further in the following section. Thus, the undersigned finds Petitioner's Fourth Amendment claim is without merit and will recommend it be denied.

5

**A.       Due Process**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

1.       Liberty Interest

As for the first step, the undersigned finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025

WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Respondents argue that "the petition should be denied because 'Petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.'" ECF No. 9, pg. 2 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)). However, Petitioner contends, and Respondents do not challenge, that Petitioner was paroled pursuant to 8 U.S.C. §1182(d)(5). This is supported by Petitioner's "Notice to Appear," issued by DHS, which explicitly states: "On December 3, 2023, you were paroled into the United States of America pursuant to Section 212 (d)(5) of the Immigration and Nationality Act." ECF No. 1-1.  8 U.S.C. §1182(d)(5) codifies Section 212 (d)(5) of the Immigration and Nationality Act and provides that:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, **in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit** any alien applying for admission to the United States, but **such parole of such alien shall not be regarded as an admission of the alien** and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. §1182(d)(5) (emphasis added).

The undersigned agrees with Respondents that Petitioner's parole does not constitute an admission, in accordance with the statute. However, the undersigned finds Petitioner's claim that his re-detention was in violation of due process does not turn on whether Petitioner has been admitted or is an applicant for admission. Indeed, §1182(d)(5) explicitly states that parole does not constitute admission and provides the Secretary of Homeland Security with the discretion to grant parole to noncitizens who have not been admitted. Thus, even if Respondents are correct that Petitioner's only "right to freedom from immigration detention," is

7

limited to "the form provided by Congress," by enacting §1182(d)(5), Congress provided an opportunity for parole, or freedom from immigration detention, which can be granted at the discretion of the Secretary of Homeland Security. Here, Petitioner was granted discretionary parole pursuant to §1182(d)(5).

Accordingly, the undersigned finds that the grant of discretionary parole provided Petitioner with a protectable liberty interest in his continued release.  See Morrissey, 408 U.S. 471 at 482.

> ### 2.    Necessary Procedure

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. The undersigned finds that Petitioner was provided the procedural process due because Respondents proceeded in accordance with 8 CFR 212.5 (e) when revoking Petitioner's parole.[2] 8 CFR 212.5 (e) prescribes a specific process for revocation of §1182(d)(5) parole:

> Termination of parole —
> (1) Automatic. Parole shall be automatically terminated without written notice
> > (i) upon the departure from the United States of the alien, or,
> > (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
> (2) (i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed

---

[2]    Though many Courts, including those within the Eastern District, consider the factors set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976) to determine what process an immigration detainee with a protectable liberty interest is owed, the undersigned finds that such a balancing test is not necessary here given the statute under which Petitioner was granted discretionary parole explicitly prescribes a process for revoking such discretionary parole.

in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 CFR 212.5 (e).

The statute includes explicit consideration of "automatic" revocation of parole, which includes the expiration of the authorized parole. See 8 CFR 212.5 (e). Petitioner's parole expired April 18, 2025, ECF No. 12, pg. 4, or December 3, 2025, ECF No. 15, pg. 3.  In accordance with 8 CFR 212.5 (e), Petitioner's revocation of parole, based on the expiration of Petitioner's parole, "shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required." Respondents contend that following the expiration of Petitioner's parole, Respondents have proceeded in accordance with 8 CFR 212.5 (e)(2). See ECF No. 15, pg. 3, n. 2. Specifically, that Petitioner's removal proceedings have continued pursuant to Section 240 and Petitioner was ordered removed on April 10, 2026. Id. Thus, the undersigned finds that Petitioner has been provided the proper process in accordance with the statute and will therefore recommend the petition be denied as to Petitioner's claim that his re-detention violated his procedural due process rights.

### 3.  Substantive Due Process

Petitioner argues his continued detention violates his substantive due process rights because "Petitioner is not a flight risk or danger to the community" and "Petitioner's detention is punitive as it bears no 'reasonable relation' to any legitimate government purpose." ECF No. 1, pg. 9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). Petitioner was ordered removed on April 10, 2026, and Petitioner filed a notice of appeal with the Board of Immigration Appeals (BIA) on April 13, 2026. See ECF No. 17. The undersigned notes that given Petitioner was ordered removed, Respondents' authority to detain Petitioner changes.

Pursuant to § 1231, "[d]uring the removal period, the Attorney General shall detain the alien." § 1231(a)(2)(A). The removal period begins:

(i)The date the order of removal becomes administratively final.
(ii)If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii)If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

§ 1231(a)(1)(B).

An order of removal becomes final:

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;
(b) Upon waiver of appeal by the respondent;
(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
(d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
(e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
(f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of the voluntary departure period granted or reinstated by the Board or the Attorney General.

§ 1241.1.

Further, an order of removal "may not be executed . . . while an appeal is pending." § 1003.6(a). As to authority to detain the noncitizen following an timely appeal, the Ninth Circuit held:

§ 1231(a) does not provide authority to detain an alien whose removal order is administratively final, but whose removal has been stayed by a court of appeals pending its disposition of his petition for review. Such aliens may be detained, however, pursuant to § 1226(a), which allows the Attorney General to detain any alien "pending a decision on whether the alien is to be removed from the United States."

Prieto-Romero v. Clark, 534 F.3d 1053, 1059 (quoting § 1226(a)).

Here, Petitioner appealed the order of removal within the permissible time and therefore, Petitioner's order of removal is not yet administratively final. In accordance with Prieto-Romero and these facts, the undersigned finds that Petitioner's current detention is pursuant to § 1226(a).

The undersigned acknowledges that the assigned District Judge has repeatedly "held that noncitizens present in the United States who were never legally admitted were 'applicants for admission' under 8 U.S.C. § 1225(b) and thus subject to mandatory detention." J.E.P.M v. Wofford, et al., No. 1:26-cv-00316 WBS CKD, 2026 WL 125270, at *2 (E.D. Cal. Jan. 16, 2026) (collecting cases). However, the undersigned finds that the facts are distinguishable

10

given that Petitioner here was issued an order of removal, but such order has yet to become final due to his appeal. Further, while the higher courts which confer binding authority on this Court have not addressed whether noncitizens previously released on parole are subject to § 1225(b) or § 1226(a) when they are re-detained, the Ninth Circuit has explicitly held that during the period which Petitioner here falls, the noncitizen is subject to § 1226(a). See Prieto-Romero, 534 F.3d at 1059.  Recent decisions by other Circuit courts do not disrupt Ninth Circuit authority on this Court and are distinguishable as the petitioners in those cases had not been issued an order of removal. See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, F.4th, 2026 WL 819258 (8th Cir. 2026). Finally, to the extent that such application is due to DHS' decision to interpret § 1225(b) more expansively, an executive agency decision does not disrupt the Ninth Circuit's holding. See Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 386 (2024) (concluding "[t]he views of the Executive Branch could inform the judgment of the Judiciary, but did not supersede it. Whatever respect an Executive Branch interpretation was due, a judge certainly would not be bound to adopt the construction given by the head of a department." (internal citations omitted)).

Under § 1226(a), the Government has broad discretion whether to release or detain the individual. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). Further, §1226(a) provides several layers of review for an initial custody determination. Id. It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Further,

> a detainee may request a bond hearing before an IJ at any time before a removal order becomes final. See 8 C.F.R. §§ 236.1(d)(1), 1003.19. If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his release. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); see also Matter of Barreiros, 10 I. & N. Dec. 536, 537-38 (B.I.A. 1964). The IJ considers various factors in making this determination, including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country. Matter of Guerra, 24 I. & N. Dec. at 40. The IJ also decides whether bond or other conditions on the alien's release are appropriate. Id.; see 8 U.S.C. § 1226(a)(2). The detainee may be represented by counsel and can submit evidence in support of his claims. See 8 C.F.R. §

11

1003.19(b); Matter of Fatahi, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. See 8 C.F.R. § 236.1(d)(3).

On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances. See 8 C.F.R. § 1003.19(e). The same procedures apply to this new hearing, and its outcome is also appealable to the BIA. See generally id.§ 1003.19.

Id. at 1197.

While the undersigned finds that Petitioner's detention is currently pursuant to § 1226(a), which entitles Petitioner to certain procedural processes, including the potential for discretionary parole, § 1226(a) also allows for continued detention. Thus, at this stage, the undersigned finds that Petitioner's detention does not violate his right to substantive due process because such detention is in accordance with the statute Petitioner falls under. Therefore, the undersigned will recommend denying the petition.

In light of his order of removal and pending appeal, Petitioner requests that this Court "COORDINATE with the Department of Homeland Security, Immigrations and Customs Enforcement (ICE), to ensure Respondent is not removed from the United States in violation of the automatic stay." ECF No. 17, pg. 2. While the undersigned acknowledges that Petitioner is statutorily entitled to a stay pending his appeal, this issue was not raised in the initial petition and more important, there is no indication that Respondents have violated that statutory right. Thus, the undersigned will not recommend the Court take any further action, absent new evidence.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends and orders:

1.      It is ORDERED that findings and recommendations, ECF No. 14, are VACATED.

2.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written

briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 21, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

13